# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3149 | **DATE** | 10/20/2004 |
| **CASE TITLE** | Pentech Pharmaceuticals, Inc. vs. Par Pharmaceuticals, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint (D.E. 23) is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 21 2004 | |
| | Notified counsel by telephone. | | date docketed | 43 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PENTECH PHARMACEUTICALS, INC.,　)
an Illinois corporation,　)
　　　　　　Plaintiff,　)
　)　Case No. 04 C 3149
　v.　)
　)　Judge Mark Filip
PAR PHARMACEUTICAL, INC.,　)
a New Jersey corporation,　)
　　　　　　Defendant.　)

## MEMORANDUM OPINION AND ORDER

Plaintiff Pentech Pharmaceuticals, Inc. ("Plaintiff" or "Pentech") is suing Defendant Par Pharmaceuticals, Inc. ("Defendant" or "Par"), alleging breach of contract (Count I); seeking a declaratory judgment as to the duties created under the contract (Count II); asserting a breach of fiduciary duty (Count III); and requesting an equitable accounting (Count IV). This case is before the Court on Defendant's Motion to Dismiss Counts III and IV of Plaintiff's First Amended Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 23)[1] As explained below, Defendant's Motion is denied.

## BACKGROUND FACTS[2]

In March of 2000, Pentech filed an Abbreviated New Drug Application (an "ANDA") with the FDA for paroxetine hydrochloride ("paroxetine"), a chemical compound. (D.E. 18 ¶¶ 10-11.) Pentech believed paroxetine could be manufactured and sold without infringing on

---

[1] The various docket entries in the case are cited as "D.E. __."

[2] The background facts are taken from Plaintiff's First Amended Complaint (D.E. 18) and are assumed to be true, as precedent requires, for present purposes. The Court takes no position concerning whether any of the allegations are actually well founded.

1



SmithKline Beecham's ("SmithKline") patent on its own paroxetine product, the drug Paxil. (*Id.* ¶ 10.) Nevertheless, in May of 2000, SmithKline sued Pentech, alleging that Pentech's new product infringed its patent for Paxil. (*Id.* ¶¶ 12-13.) Because of this litigation, Pentech incurred considerable costs and needed to fund its continued defense of the case. (*Id.* ¶ 15.) Consequently, in November of 2001, Pentech and Par entered into an agreement "to alleviate Pentech's rising costs to defend" the litigation with SmithKline. (*Id.* ¶ 16) This agreement provided that Par would pay certain amounts to Pentech to continue Pentech's defense in its lawsuit again SmithKline (100 percent of all legal fees under $2,000,000 and 70 percent thereafter of legal fees over $2,000,000), and in return, upon FDA approval, Par would be the exclusive distributor of Pentech's paroxetine product. (*Id.* ¶¶ 16-20). The agreement provided that Par and Pentech would "share ultimate decision making authority" in the litigation with SmithKline if the legal fees and expenses exceeded $2,000,000, but that Pentech would have "ultimate decision making authority" for the litigation if expenses remained below $2,000,000. (Supply and Marketing Agreement, § 2.2, attached to the First Amended Complaint as Exhibit A) In return, Par and Pentech agreed to split the profits from the distribution of Pentech's paroxetine product. (D.E. 18 ¶ 19.)

In 2002, apparently as the cost of the ongoing litigation and other funding needs continued to grow, Par and Pentech executed an amendment to the agreement. Section II.A. of the amended agreement replaced Section 2.2 of the original agreement in its entirety. (*Id.*, Ex. B at A-2.) Relevant to this opinion, Section II.A. provided that "Par shall have sole and exclusive control" of the litigation with SmithKline and that "Par will be fully responsible for all reasonable legal fees and expenses incurred by Pentech after the date of this Agreement resulting

2

directly from" the SmithKline litigation. (D.E. 18 ¶¶ 22-24.) Furthermore, the amended agreement provided that in the event of a settlement, Par will first be reimbursed for all of its direct costs relating to the development and marketing of paroxetine," and that any remaining amounts would be "divided 60% to Par and 40% to Pentech." (*Id.* ¶ 26.)

Subsequently, Par and its counsel, on Pentech's behalf, entered into settlement negotiations with SmithKline. (*Id.* ¶ 28.) The resulting settlement agreement included an arrangement whereby SmithKline would manufacture and deliver a generic, tablet form of Paxil to Par at no cost, receiving only royalties based on the product's sales. (*Id.* ¶¶ 34-35.) At the same time, Par entered into an agreement with an affiliate of SmithKline that allowed Par to market the generic Paxil in certain locations under certain conditions. (*Id.* ¶ 29.) Par allegedly has profited considerably from this arrangement but has refused to account for its sales or to remit to Pentech its previously agreed upon share of any profit. (*Id.* ¶¶ 37-38.)

Pentech sued Par under a number of legal theories. In current relevant part, Pentech alleges that Par had a fiduciary duty to Pentech in connection with the defense and settlement of the litigation with SmithKline. (*Id.* ¶ 58.) Par allegedly breached this duty by failing, *inter alia*, to disclose any conflict Par had with Pentech, to advise Pentech to obtain its own counsel, and to advise Pentech that it intended to take the position that the proceeds of the SmithKline paroxetine sold by Par would not be amounts "out of" the settlement as contemplated in the Par-Pentech agreement. (*Id.* ¶ 58.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *accord Johnson v.*

*Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on the motion, the Court accepts all well-pleaded facts alleged in the complaint as true and accords the plaintiff every reasonable inference from those facts. *See McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *accord Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). Dismissal is appropriate only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## DISCUSSION

I. Count III - Breach of Fiduciary Duty

The original agreement between Pentech and Par states that the terms of the contract are to be governed and construed by the laws of New York. As the fiduciary duty claim set forth in Pentech's complaint arises from the duties relating to the parties' litigation agreements, New York fiduciary duty law must be applied to the facts of this case.

Par argues, quite simply, that no fiduciary relationship existed between Pentech and Par. To succeed on a claim for breach of fiduciary duty in New York, Pentech must prove three elements: (1) a fiduciary duty between the parties; (2) defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach. *See Kidz Cloz, Inc. v. Officially for Kids, Inc.*, 2001 U.S. Dist. LEXIS 1135, *11 (S.D.N.Y. 2001). A fiduciary duty generally must arise out of a "relationship of confidence, trust, or superior knowledge or control, and may exist where one entity 'is under a duty to act for or to give advice for the benefit

4

of another upon matters within the scope of the relation.'" *BBS Power Mod, Inc. v. Prestolite Elec., Inc.*, 71 F. Supp. 2d 194, 203 (W.D.N.Y. 1999) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987)). A fiduciary duty arises between parties only in those circumstances where there exists a relationship that constitutes something more than an "arms length contractual arrangement." *Valjean Mfg., Inc. v. Michael Werdiger, Inc.*, 2004 U.S. Dist. LEXIS 17580, *11 (S.D.N.Y. 2004). In other words, a fiduciary relationship exists under New York law "from the assumption of control and responsibility . . . and is founded upon trust reposed by one party in the integrity and fidelity of another." *Id.* (quoting *Beneficial Commercial Corp. v. Murray Glick Datsun. Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985)).

Generally, New York courts are loath to recognize the existence of a fiduciary relationship between contracting sophisticated parties to a business transaction where the relationship is not created explicitly in a contract. *See Compania Sud-American de Vapores v. IBJ Schroeder Bank & Trust Co.*, 785 F. Supp. 411, 426 (S.D.N.Y. 1992) (collecting cases). This is because parties in an average commercial transaction deal at arms length, where "no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise" absent "extraordinary" additional factors. *Id.* Those factors generally relate to "the superior position of one party (typically the defendant), such that the plaintiff must place its trust and confidence in the defendant." *BBS Power Mod, Inc.*, 71 F. Supp. 2d at 203; *accord, e.g.*, *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 734 (S.D.N.Y. 2000) ("special factors . . . [may] create fiduciary relationships between contracting commercial parties, such as, for example, when one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party.").

5

Under New York law, the existence of a fiduciary duty "depends on the facts of a particular relationship." *Olshansky v. Sutton*, 2001 U.S. Dist. LEXIS 945, *14 (S.D.N.Y. 2001) (collecting cases). As a practical matter, given the generous pleading standard set forth in Fed. R. Civ. P. 8, the requisite fact-intensive analysis necessary for determining whether a fiduciary relationship exists means that a claim alleging the existence of a fiduciary duty usually is not subject to dismissal in a 12(b)(6) motion but instead is evaluated at later stages of the litigation. *See, e.g., Boley v. Pineloch Assoc., Ltd.*, 700 F. Supp. 673, 680-81 (S.D.N.Y. 1988) ("Usually, therefore, a claim alleging the existence of a fiduciary duty is not subject to dismissal in a 12(b)(6) motion, given the generous pleading standard established in Fed. R. Civ. P. 8."). Such is the circumstance in the instant case. Par is unquestionably correct: Pentech's relationship with Par as it pertains to the litigation with SmithKline is a commercial one, premised on a contract that does not explicitly create a fiduciary relationship. (*E.g.*, D.E. 30 at 5-7.) However, these arguments are not enough to overcome the deference afforded a plaintiff at this stage.

First, Par claims that the lack of an express contractual provision creating a fiduciary relationship demonstrates that the relationship was not a fiduciary one. (D.E. 30 at 2.) Admittedly, absent an express provision, parties that deal with each other at arms length generally do not enjoy a fiduciary relationship. *See, e.g., Valjean*, 2004 U.S. Dist. LEXIS at *12 (collecting cases). However, an express provision creating a fiduciary relationship is not a necessary condition to its existence. "[I]t is not mandatory that a fiduciary relationship be formalized in writing." *Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 13-14 (N.Y. App. Div. 1998). Rather, "the ongoing conduct between the parties may give rise to a fiduciary relationship that will be recognized by the courts." *Id.*

While Par is correct that commercial parties to a contract do not typically have a fiduciary relationship, in "limited and unusual circumstances" the connections between commercial parties may involve sufficient dependence to create a fiduciary relationship. *Calvin Klein Trademark Trust*, 123 F. Supp. 2d at 734. Par contends that Pentech merely placed a "normal" amount of trust in Par, that Par had a routine amount of control in the settlement negotiations with SmithKline, and that Par enjoyed no superiority over Pentech. (D.E. 23 at 9-10.) To that end, Par relies on the words of the contract with Pentech, which gave the president of Pentech "unlimited access to and contact with" Par's lawyers. (*Id.* at 10, quoting D.E. 18, Ex. A, ¶ 2.2.) Par also highlights another important consideration—namely, that Par-Pentech agreement stated that "[t]he relationship between Pentech on the one hand and Par on the other, is that of independent contractors and nothing herein shall be deemed to constitute the relationship of partners, joint venturers nor of principal and agent between Pentech on the one hand and Par on the other hand." (*See, e.g.*, D.E. 30 at 4 (citing D.E. 18, Ex. A, at 18).) Conversely, Pentech alleges that Par enjoyed extraordinary control over the settlement negotiation, citing the first amendment to the agreement, which gave Par "sole and exclusive control" of the litigation and "sole decision making control" over developing and obtaining regulatory approval for a paroxetine product. (D.E. 18 ¶¶ 24-25.)

At this juncture, it is inappropriate for this Court to assess the intricacies and merits of the contractual relationship and dealings between Pentech and Par to determine whether this level of control is simply "normal," or if it is "extraordinary." Placing the alleged facts under the microscopic scrutiny necessary to make this determination would be inconsistent with Fed. R. Civ. P. 8 and precedent concerning motions to dismiss.

Plaintiff's claim may or may not survive summary judgment after factual discovery has taken place, but at this stage of the proceedings, reading the alleged facts in a light most favorable to Plaintiff, dismissal is inappropriate.

II.  Count IV - Accounting

Under New York law, to sustain an action for an accounting, a party must establish four elements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." *Dayan Enterprises, Corp. v. Nautica Apparel, Inc.*, 2003 U.S. Dist. LEXIS 21344, *1 (S.D.N.Y. 2003) (quoting *Pressman v. Estate of Steinvorth*, 860 F. Supp. 171, 179 (S.D.N.Y. 1994)). It is "axiomatic that 'absent any factual allegation or evidence of a fiduciary relationship, [a] cause of action for an equitable accounting cannot stand.'" *Isanaka v. Spectrum Tech. USA Inc.*, 131 F. Supp. 2d 353, 362 n. 14 (S.D.N.Y. 2001) (quoting *Village of Hoosick Falls v. Allard*, 672 N.Y.S.2d 447, 449 (N.Y. App. Div. 1998)).[3]

---

[3] Plaintiff asserts that absent a financial relationship between Pentech and Par, its claim for an equitable accounting would still lie. (D.E. 20 at 12-13.) As support, Plaintiff relies on a case over twenty years old for the proposition that even without a fiduciary relationship, an accounting is permissible "where it appears that the account [is] of such complexity that the legal remedy of damages would be adequate." *Cutlass Prods., Inc. v. Bregman*, 1982 U.S. Dist. LEXIS 10939, *7, *vacated on other grounds*, 682 F.2d 323 (2d Cir. 1982). This statement is contradicted by express teaching in multiple cases that explicitly require a fiduciary relationship as a prerequisite for an equitable accounting. *See, e.g. Bogil v. Fidelity Management Trust, Co.*, 1989 U.S. Dist. LEXIS 4539, *7 (S.D.N.Y. 1989) ("In both Massachusetts and New York, an equitable accounting is available only if there exists a fiduciary or trust relationship between the parties.") (internal quotation and citations omitted); *Adam v. Cutner & Rathkopf*, 656 N.Y.S.2d 753, 759 (App. Div. 1997) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship . . .") (internal quotation and citation omitted). This Court need not wrestle with this incongruity at the present time, since Pentech's claim that a fiduciary relationship existed between Pentech and Par

First, Par argues that Pentech's action for an equitable accounting should be dismissed because it lacks the essential fiduciary relationship with Par. (D.E. 30 at 11-12.) This argument was already rejected above, at least in the context of a 12(b)(6) motion to dismiss. The second requirement is also satisfied, since Pentech alleges that Par profited "from its multi-million dollar sales of paroxetine provided by SmithKline" pursuant to the settlement agreement but will not account for its sales. (D.E. 18 ¶¶ 37-38.) Furthermore, Pentech has satisfied element four at this stage by alleging that "despite numerous requests by Pentech, Par has refused and continues to refuse to account for its sales . . . ." (*Id* ¶ 38.)

The final element, which provides Par's final ground for moving to dismiss Pentech's accounting claim, is whether Pentech's breach of contract claim "directly contradicts its conclusory allegation of an inadequate remedy at law." (D.E. 23 at 12). However, "even though [a] plaintiff may have a legal remedy, she is not precluded from seeking equitable relief by way of an accounting predicated upon the existence of a fiduciary relationship." *Darlagiannis v. Darlagiannis*, 369 N.Y.S.2d 475, 476 (N.Y. App. Div. 1975); *see also Dayan Enterprises Corp.*, 2003 U.S. Dist. LEXIS at *2; *Arnold Productions, Inc. v. Favorite Films Corp.*, 298 F.2d 540, 542 (2d Cir. 1962) ("Even though an accounting were required to ascertain the amount of damages, that fact would be insufficient to support a claim for equitable relief unless a fiduciary relationship were shown."); *Kelly v. Saber*, 1979 U.S. Dist. LEXIS 13899, *4 (S.D.N.Y. 1979) (allowing an accounting where "[a]lthough it is possible, as the defendants contend, that Kelly will receive adequate relief through pre-trial discovery, she has alleged a breach of fiduciary duty

---

has survived the motion to dismiss.

and is entitled to equitable relief if the legal remedy proves inadequate."); *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (N.Y. App. Div. 1986) ("The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest.").[4] At this stage of the litigation, at least, Plaintiff's claim for an accounting is not subject to dismissal.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied.

So ordered.

                                                               */s/ Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Dated: 10-20-04

---

[4] Par cites no instance where under New York law a court has found the existence of a fiduciary relationship and also denied a request for an accounting because there was an adequate remedy at law under a breach of contract claim.